[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR ORDERS POSTJUDGMENT
On January 16, 1992, the plaintiff commenced this action for visitation. On June 21, 1991, the defendant gave birth to the minor child, Sarah. The plaintiff is the father of Sarah and has acknowledged his paternity of the child. At the time of the commencement of this action, the parties were living apart. On February 20, 1992, the parties entered into an agreement which was submitted to the court (Karazin, J.) and orders entered thereon. That agreement provided as follows:
1. Sole custody of the minor child, Sarah Brooke Santos, shall be with the defendant-mother provided, however, that: (a) in the event of an emergency involving the minor child or a major event in the child's life, the defendant-mother shall notify the plaintiff-father; and (b) in the event the defendant mother anticipates moving a distance of 50 miles from the City of Bridgeport, the defendant-mother shall notify the plaintiff father a period of 6 weeks prior to said anticipated move so that the plaintiff father shall have the opportunity for recourse to the Court.
2. The plaintiff-father shall have visitation with the minor child every Sunday, commencing Sunday, Feb. 23, 1992, from 3:00 p.m. to 8:00 p.m. The plaintiff father's right of visitation shall take place at the home of the plaintiff's mother, Leonore Santos, and in the event the plaintiff's mother moves, at the home or apartment of the plaintiff's sister, Paula Santos. The defendant mother's father, Raymond Marquez, and/or the defendant mother's brother, Raymond Marquez, shall be present at the time of the plaintiff-father's visitation with the minor child.
On August 17, 1992, the plaintiff served upon the defendant an order to show cause seeking that the order of February 20, 1992, be modified alleging that the defendant had refused to give him rights of visitation. On September 17, 1992, the matter was referred to Family Services for a custody evaluation. In the interim period, temporary orders were entered on the stipulation of the parties. That stipulation CT Page 2662 provided for visitation at Raphaela Aramboghli's home on Sundays beginning September 27 from 4:00 to 6:00 p.m. That visitation did not take place because Ms. Aramboghli's house burned down that weekend.
On November 16, the plaintiff filed an amended motion to modify visitation. On December 4, 1992, the court ordered that the plaintiff have two occasions of visitation each week, the duration of each visit to be one hour, that the visitation be supervised preferably in a public place, that the plaintiff have no weapons possessed by him during visitation and that the defendant might be present so long as "she doesn't interfere."
On January 27, 1993, Family Services completed its report. That report notes that the court had ordered psychological evaluation for Mr. Santos. While a motion requesting such an order was filed by defendant's counsel, it was never acted upon. A like motion was filed by plaintiff's counsel requesting an order for the defendant's psychological evaluation. This motion, too, was never acted upon. The recommendation of the Family Services counselor was that no visitation occur until a full psychological evaluation of Mr. Santos be completed. The counselor's recommendation was that the custody matter be withdrawn from study until the psychological evaluation was completed.
There was no further action in this file until 2002 when the plaintiff filed a motion for modification of visitation and a motion for contempt. The motion for contempt addresses the most recent order providing for two occasions of visitation per week, such visitation to be of one hour duration.
On July 18, 2002, Attorney Geraldine Ficarra was appointed guardian ad litem for Sarah and the matter was again referred to Family Services for investigation and recommendation and the motion for visitation was continued to August 15. The matter was heard at that time by the Honorable Arthur Hiller. Judge Hiller ordered visitation on August 16, 2002, at 10:00 a.m. to take place at Attorney Ficarra's office. The matter was then continued for the completion of Family Services' report.
This court has now conducted a full hearing in which the Family Services' counselor, the guardian ad litem for the child, the plaintiff, the defendant, the plaintiff's sister, the plaintiff's mother, and the defendant's husband all testified. The plaintiff and the defendant were boyfriend/girlfriend and resided together on Howard Avenue in Bridgeport. In June 1991 their child Sarah was born. Thereafter, the parties moved to Lincoln Avenue and then separated in 1992. The defendant brought Sarah for visitation with her father for two weekends and then CT Page 2663 stopped. It was after that that the plaintiff commenced this action for visitation and the agreement of February 20, 1992. Thereafter, the defendant refused to comply with the terms of the agreement.
It was on or about March 1992 that the plaintiff was threatened that he would be killed if he continued to pursue visitation with the child. His car was shot at and cars would drive by with the occupants shouting epithets and threats. It was at or about this time that the defendant's step father and brothers attacked the plaintiff resulting in his hospitalization with a broken nose, a concussion and stitches in the back of his head. The plaintiff obtained a second order to show cause for modification. The parties arrived at another agreement providing for supervised visitation; however, that visitation never took place.
During this same period, the defendant testified it was necessary to obtain two orders restraining the plaintiff from threatening and harassing her. The court has been unable to find a record of these proceedings. The plaintiff denies that he ever threatened or physically abused the defendant. It is clear that the relationship between the parties had deteriorated in 1992 and that each party is afraid of the other.
From 1992 to 1995, the plaintiff lost all contact with the defendant. In 1995, the parties were in contact with one another and there was what the plaintiff has referred to as a "reunion" for about three months. During this period, the plaintiff was with Sarah a great deal of the time. After that visit, the defendant again left without advising the child's father where she was or how he might contact his child. It was not until June 2002 that the plaintiff knew where the defendant could be reached. He discovered she was married and lived in Laurel Fork, Virginia. On August 15, Judge Hiller ordered that the plaintiff have visitation with his daughter at Attorney Ficarra's office. That visitation took place. Ms. Ficarra reports that the child was terrified and that she stated she did not want to do this. She testified that the child was crying and was afraid. She stated further that the visit went "o.k." and that Sara did participate in the conversation. However, after the meeting, Sarah said she did not like the visitation and she started crying again.
The Family Services counselor has set forth a summary of the issues in this case. In her report she states:
The father wants to reestablish his relationship with Sarah, and to have his daughter spend extended periods of time with him. His main concern is Mrs. Thomas [defendant] keeping their daughter away from him. CT Page 2664 Marisol Thomas is terrified of her daughter's father, and her primary issue is Mr. Santos' alleged history of violent behavior. Further, the mother states that Sarah refuses to have contact with her father.
This summary sets forth the issues succinctly and clearly.
In her report, the Family Services counselor has stated that each of the parties have different explanations of how and why the plaintiff lost contact with his daughter. Each places the responsibility for this squarely on the other's shoulders. The guardian ad litem has testified that the court must decide whether the plaintiff abandoned his daughter or the defendant hid her from him.
The court finds the father to be a fit parent to have visitation with his daughter. The court finds the defendant to be a fit parent to continue to have Sarah's custody. There has been no evidence to support the defendant's contention that the plaintiff's violent past renders him unsuitable to have a place in his daughter's life.
The issue for the court to determine is what order is in the best interests of the child. Based upon the evidence which includes the testimony of both parties, the witnesses and the exhibits, the court finds it is in Sarah's best interest to have a relationship with her father.
The Family Services counselor has stated as follows:
The animosity and lack of trust between the parents makes this a most difficult situation in which to reestablish a father/daughter relationship. The logistics of an access plan, given the distance between the parents' homes, further complicates an already challenging set of facts. In the final analysis, however, Sarah deserves the opportunity to know her father and form her own opinions regarding him and the future of their relationship. Considering this given, it is recognized that her physical and emotional well-being must be protected in this process. It is recommended that a supervised visit of several hours for the father with his daughter, occur in a location near Sarah Santos' residence. It is further recommended that visitation then occur in Connecticut. Sarah should be brought to Connecticut for a vacation period of approximately one week. During this time, a supervised visit should occur, followed within days by as much unsupervised visitation as can be arranged. The above plan should be set, approved and monitored by counsel for the minor child. At the close of these visits, a future access plan should be determined and put in place. Finally, the Family Services office should monitor subsequent visitation for one year. CT Page 2665
Who may be at fault for the fact of father's visitation with the child is really not an issue that must be determined by the court. However, the court does find that the reason the plaintiff has not been able to exercise visitation with his daughter or to have a relationship with her is because he did not know where the defendant could be reached during all of the period 1995 to 2002. The court finds that the defendant did hide her from him.
The court enters the following orders:
1. The plaintiff shall have supervised visitation with his daughter, the first time to occur at Attorney Ficarra's office at a time and date selected by her and convenient for all the parties. At that time, provided the guardian ad litem believes that visitation has not been detrimental to the child, a second visitation shall be held at Attorney Ficarra's office while the defendant is present in this area.
2. Visitation will thereafter be held in Virginia in the vicinity of the defendant's residence at a counseling center, or similar facility as arranged by Attorney Ficarra, with the counselor to be present during such visitation. Plaintiff may have with him any member of his family that he chooses, preferably Sarah's grandmother.
3. Attorney Ficarra shall arrange a fourth visitation in the Bridgeport vicinity to be supervised by her.
4. Expenses of transportation shall be shared equally, which shall include automobile expenses and lodging in Connecticut and Virginia.
5. The parties shall return for further orders of the court and for a report by the guardian ad litem.
6. The plaintiff shall have telephone communication with his daughter once per week, the conversation to last no longer than fifteen (15) minutes unless Sarah should request a longer or lesser period of time. The guardian ad litem shall arrange a convenient day and time for these phone conversations. Should Sarah herself express her wish that she does not wish to talk to her father, she shall not be made to do so. The defendant shall not state Sarah's wish in this respect. It must be stated by Sarah herself to her father.
7. So that it may be clear to any subsequent court that may hear this matter, it is this court's recommendation that visitation shall eventually be unsupervised. The reason for the supervision is for the CT Page 2666 benefit of the child's comfort and not because this court has any apprehension about the plaintiff's behavior during visitation.
8. Neither party shall denigrate the other party while in their daughter's presence or within her hearing.
9. The defendant shall encourage Sarah to have a relationship with her father and to participate in the visitations.
10. The fees of the guardian ad litem shall be shared equally. Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE CT Page 2667